POWERS v. HALLADAY.

1. ADJOINING LANDOWNERS—PARTY WALLS—LINE—STREETS.
  Notwithstanding it may injuriously affect an adjoining
  store building, the owner of a lot is entitled to construct
  a building on his ground as near to the street line as he
  may prefer, unless some agreement or public regulation
  restricts his rights.

2. PARTY WALLS—CONTRACTS—EASEMENTS—BUILDINGS.
  Where the owners of adjoining business property executed
  a party wall agreement restricting the parties by a pro-
  vision that if either should construct a longer building
  it should be on the line of the party wall, and the other
  should be entitled to make use of the extension of the
  wall on paying one-half the cost, providing, also, if any
  additional stories of either building should be constructed
  the owner would place the wall on the agreed line,
  neither proprietor was prohibited from building as near
  the street line as he might want to do, although his action
  might be detrimental to the other.

3. SAME—PAROL AGREEMENT—ESTOPPEL.
  Although one of the joint owners of the property did not
  sign and execute the written agreement, she was bound
  by the parol agreement by making use of the existing
  wall as a party wall.

Appeal from Calhoun; North, J. Submitted Janu-
ary 9, 1914. (Docket No. 29.) Decided March 26,
1914.

Bill by Walter S. Powers against Frank Halladay
and Blanch H. Lyle for an injunction and other relief.
From a decree for defendants, complainant appeals.
Affirmed.

*James M. Powers,* for complainant.

*Hillard G. Lyle,* for defendant Lyle.

*Frank W. Clapp,* for defendant Halladay.

OSTRANDER, J. Complainant owns a two-story brick store building, 66 feet wide and 80 feet long, on the south side of East Main street in the city of Battle Creek, and the land on which it is built; the lot being 132 feet long or deep. The foundation and walls of the building are of sufficient strength to support two or three other stories. There are three stores on the ground floor, with plate glass windows for displaying wares. Defendants own land 22 feet in width next west of complainant's building, having a depth equal to or greater than the land of complainant, and, when the bill in this cause was filed, were proposing to build thereon, and have since built, a one-story brick store building. The west wall of complainant's building is a party wall; one-half of it standing on his own, and one-half on defendants', land. The east wall is built entirely on complainant's land, and since the structure was erected, the owner of the land on the east has built a brick three-story building, using the wall as a party wall. Complainant's building and the one east of it are comparatively modern structures, having been erected since the year 1904, and their fronts are some 44 inches back from the street line.

Defendants, in erecting their building, used the party wall, and then extended their building north, beyond it, some 44 inches towards the street; the extension being built entirely upon defendants' land. The front and the show windows of defendants' building therefore obstruct the view of complainant's premises, and assert themselves in a way which complainant claims, and gave testimony tending to prove, injures his property. The suit is brought to restrain defendants from building and maintaining a building approaching nearer to the street than does complainant's building. It was supposed that defendant Frank E. Halladay was owner of the land west of complain-

ant, but it was discovered, after the bill was filed, that his sister, defendant Lyle, was a co-owner of the land, and interested in the building to be erected. The bill was accordingly amended, and both defendants have answered. The cause was heard, and a decree was entered dismissing the bill.

However impertinent and unneighborly, indeed, however injurious, such action may appear to the neighboring owner to be, it will probably be conceded, and complainant appears to concede, that, unless restricted by agreement or by public regulation, the owner of land may build upon it as near the street line as he pleases. Complainant asserts an agreement which he says ought to be construed and held to restrict defendants from building nearer to the street than complainant has built. The contract restriction which is asserted is evidenced by a writing, which reads:

"This indenture made this 31st day of May, A. D. 1907 between Walter S. Powers, singleman, of the city of Battle Creek county of Calhoun and State of Michigan, and Frank E. Halladay of the same place, witnesseth: That whereas the said Walter S. Powers is the owner of the lot and store known as lot 18 of range of blocks 8 in the said city of Battle Creek, and the said Frank E. Halladay is the owner of the lot adjoining the same on the westerly side thereof, on which last-mentioned lot the said Frank E. Halladay desires at some future time to erect a brick building: And whereas the westerly wall of the two-story building now standing on said lot 18 of range of blocks 8, stands one-half upon the lot of the said Frank E. Halladay:

"Now, therefore, the said Walter S. Powers in consideration of the sum of one dollar and other valuable considerations and the mutual promises herein made on the part of the said Frank E. Halladay, to him in hand paid, the receipt whereof is hereby acknowledged, doth for himself, his heirs, executors and assigns covenant, grant, promise and agree to and with

the said Frank E. Halladay, his heirs, executors, administrators and assigns, that he, the said Frank E. Halladay his heirs and assigns shall or may in the erection of said brick building when built as aforesaid, freely and lawfully, but in a workmanlike manner, and without damage to the property of said Walter S. Powers, make use of such westerly wall of the said building belonging to said Walter S. Powers, or so much thereof as the said Frank E. Halladay, his heirs and assigns, may desire, as a party wall, to be constructed and used as such forever.

"It is further agreed that in case either party, their heirs or assigns, desire to build a building longer than the present wall herein described, the same shall be on a line with the present wall, and if either party shall desire to build more than two stories high, the wall shall be on top of and on the same line as the present wall or any extension thereof; and when either party shall extend the said wall, the other party shall have the right to use as a party wall and join the same by paying the other party one-half the cost of such wall as he shall use. It is distinctly understood and agreed that the wall herein described and any extension thereof shall at all times be and the same is a party wall.

"And the said Walter S. Powers and Frank E. Halladay do hereby mutually agree for and with themselves, their heirs and assigns, that if it shall hereafter become necessary or desirable to repair or rebuild the whole or any portion of said party wall, the expense of such repairing or rebuilding shall be borne equally by the parties hereto, their heirs or assigns, as to so much and such portion of said party wall as the parties hereto, their heirs and assigns, shall or may at the time of rebuilding or repairing be used in common for the purpose aforesaid, and that whenever said party wall or such portion thereof shall be rebuilt, it shall be erected on the same spot and on the same line, and be of the same size, and the same or similar material, and of like quality with the present wall.

"It is further understood and agreed that in case of damage or destruction of said wall and any extension thereof, including the foundation, either party, their heirs and assigns, shall have the right to repair

or rebuild the said wall, and said extension, and the other party whenever he desires to use the same shall have the right so to do upon the payment of one-half the expense of such repairing or rebuilding.

"It is further understood and agreed between the aforesaid parties, that this agreement shall be perpetual, and at all times be construed as a covenant running with the land; and that no part of the fee of the soil upon which the party wall above described stands shall pass or be vested in either party in any other manner than if this agreement had not been made. It is further agreed upon the part of said Frank E. Halladay, his heirs and assigns, that whenever they or either of them shall make use of said party wall, that the windows now in said wall when taken out shall belong to said Walter S. Powers, and the said Frank E. Halladay, his heirs or assigns shall brick up and fill in the wall where said windows are taken out, and will finish, plaster and tint the inside of the wall to correspond with the rest of the room on the inside of the building now owned by said Walter S. Powers, and the same shall be done in a good workmanlike manner without expense to said Walter S. Powers.

"In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

"WALTER S. POWERS.      [L. S.]
"FRANK E. HALLADAY.      [L. S.]

"Signed, sealed and delivered in the presence of Herbert A. Powers. Albert Garton."

The circumstances, or some of them, which, it is claimed, may be considered as an aid in discovering the intention of the parties are that, when the grantor of complainant contemplated the erection of his building, and when he was surveying the land for the purpose of building, defendant Halladay and he made a parol agreement that the west wall should be built one-half on the Halladay land and used as a party wall, the owners of the parcels to pay each one-half of the cost of the wall. The suggestion was made by defendant Halladay. Concerning the terms of the

agreement, complainant's grantor testified, in part, as follows:

"*Fourth.* To the fourth interrogatory this deponent saith: I had several conversations with Mr. Halladay (I do not remember which one of the Mr. Halladays it was) concerning said party wall. My best recollection is that my talk was with Frank E. Halladay. Mr. Halladay was not ready to build at that time, but was willing to pay for one-half of the party wall to be used by him some time in the future, and, in accordance with our agreement, verbally arrived at as I remember, the wall was placed one-half on their land and one-half on mine, and they paid me for one-half of the wall, with the privilege of using it whenever they choose to build, but this applied only to the wall as built. However, I think there was an understanding between us, which was verbal as I remember it, although that may have been reduced to writing, that, in the event Mr. Halladay, when he built, desired to erect a deeper building than the one I erected he could do it on the party line in the rear, one-half on each property, I to have the right to buy one-half of such longer wall if I ever deepened my building, and, in case I extended my building first, he was to have the same right and privilege. My best recollection is that these things were not in writing. My best recollection, too, is that I put girders in the rear of my building, so that, if I wished to extend it at any time, I could do so without doing serious damage to the store that now stands and also that the party wall was not to be used for any building to be built nearer the street than mine.

"*Fifth.* To the fifth interrogatory this deponent saith: I remember that my building was placed from three to four feet back from the street line. My best recollection is that neither Mr. Halladay nor any one else who might succeed him had or was to have any right to build nearer the street than my building was if the party wall was used.

"*Sixth.* To the sixth interrogatory, this deponent saith: I am quite positive that I had no understanding with any one that they could make use of said party wall to place a building nearer the street than mine. * * *

"*Eighth.* To the eighth interrogatory deponent saith: My best recollection is that all of my agreements were with Frank E. Halladay, and that it was understood and agreed between us that in making use of the party wall, no building was to be erected nearer the street than mine."

Upon this subject defendant Halladay testified:

"I am one of the defendants in this action. My sister, Blanche Halladay Lyle, is the other defendant, and we two are the owners of the block on which part of the party wall is located here.

"*Q.* And were you two the owners at the time that any talk was had between you and Mr. Stine with reference to that party wall?

"*A.* Yes, sir; I had talked with Mr. Stine with reference to the building of a party wall. I saw him surveying one day down here, and I asked him what he was going to do, and he said he was going to build a building in here, and I said why not have a party wall. He wanted to know what I meant by that. Well I said, build one-half on your own and one-half on my land, and I said that would give us each more room inside of our building and save us the expense of each building a wall. He said he thought it was a pretty good proposition and he would think it over. It run along I cannot say just how long, but a short time after that I met him down here and asked him what he thought about it, and he said he thought it was all right, a good thing for both of us. As I remember, that was just before he commenced to dig his cellar.

"*Q.* Was there anything said by him to you, or between you, as to where the front line of his building was going to be?

"*A.* Not at that time, I don't think.

"*Q.* He erected his building. State whether or not in any conversation you had with him you made any promise or agreement. Was there anything said in any conversation with him relative to where the front line of any building should be placed on the vacant piece of ground adjoining the proposed building to be erected by him on the west? * * *

"*A.* I do not have any recollection of any such conversation. There was certainly no positive agree-

ment between he and I as regards the wall in that direction. I could not have made such an arrangement with Mr. Stine—I could not possibly have made such an arrangement because I had no authority to make it. I had no understanding with reference to that."

He further testified that complainant and others protested against his erecting his building on the street line; that he built a portion of the front of his building on Sunday, so that the work would not be interfered with by injunction. As appears thereby, the written agreement concerning the party wall was made between complainant and defendant Halladay after complainant had purchased the building, and before defendants had begun to build. Defendant Lyle is not a party to it, and it does not, in terms, fix the line for the front of the buildings. There is testimony sustaining the conclusion that defendant Halladay knew when the wall in question was to be erected when he made his parol agreement with Stine; that he saw the wall while it was being erected, and knew, when he executed the indenture referred to, where it was located. Complainant testified that he understood from his grantor, Stine, what bargain Stine and Halladay had made, and that, before purchasing the building from Stine, he had with Halladay an understanding that Halladay was to pay Stine for one-half the wall, a fact which was to be taken into consideration in the price to be paid by complainant to Stine, and that they (complainant and Halladay) were to subsequently enter into a written agreement in relation to the wall. The fronts of the buildings to the east and west of complainant's building are not at an uniform distance from the street line. Two of them, belonging to defendants, one, the building in question, and the other, next to it, an old building known as the Halladay Inn, are built to the street line. A new

three-story building, erected by defendants, is 4 feet 9 inches back from the line, and others are from a little less than 3 feet to 10½ feet from the street line. In the space intervening the front walls and the street line there are in some cases steps, in one case a bow window, and in another a platform.

The defendant Halladay in his answer sets up:

"That, while this defendant did not consult said Blanche Halladay Lyle at the time of making said party wall contract, still it was made in her interest as much as in the interest of this defendant, and that, after its execution, she (said Blanche Halladay Lyle) was informed about it, and then consented to the same, and ratified said party wall contract; that this defendant at that time was handling and looking after the interests of both of said defendants in said property and other property belonging to both of said defendants, said property being undivided property, and, while only his own name appears to said party wall contract, it was in reality made in the interest of and for the benefit of both of these defendants; and that both of these defendants claim therefore that they have the same interest and right therein"—and gave testimony to the like effect.

The defendant Lyle in her answer sets up the following:

"This defendant admits that the only contractual parties appearing in said party wall contract are said complainant and said defendant Frank E. Halladay, but this defendant denies that no one but said complainant and said defendant Frank E. Halladay have any rights and interest in said party wall contract, or any right to use said party wall, but, on the contrary, avers the fact to be that she, as part owner, has the same rights in said contract as said defendant Frank E. Halladay, and admits that both of these defendants are using and claim the right to use said party wall, and that they have already removed brick from said party wall, and have placed the necessary timbers for the construction of said building in said party wall, but that such action on the part of these defendants is not contrary to the rights of said com-

plainant or any violation of the terms of said party wall contract, but is wholly within the rights of this defendant and said defendant Frank E. Halladay to use said party wall or to join said building now in process of construction to said wall. This defendant further answering said paragraph 10 of said amended bill of complaint, avers that all moneys paid by the said defendant Frank E. Halladay for that part of the party wall which stands upon the vacant lot owned jointly by these defendants was the money of both of these defendants, and that, although defendant Frank E. Halladay did not confer or consult with this defendant regarding the making of the said party wall contract, the fact, however, is that said defendant Frank E. Halladay, being the brother of this defendant, has represented this defendant in all matters and transactions pertaining to the joint interests of these defendants, as well as to this defendant's personal estate and property rights in the city of Battle Creek ever since the death of the father of these defendants, or upwards of 18 years; that said Frank E. Halladay has at all times used his judgment as the representative of this defendant in matters pertaining to their joint interests, and has had his actions ratified and confirmed by this defendant; that, after said party wall was executed by said complainant and said defendant Frank E. Halladay, said Frank E. Halladay advised this defendant of his action, and this defendant did, after reading the party wall contract, confirm and ratify the same, and that, while only the name of said defendant Frank E. Halladay appears on said contract with the complainant, said defendant Frank E. Halladay did in reality make said contract in the interest of and for the benefit of both of these defendants, and therefore this defendant claims to have the same interest and right in said contract as said defendant Frank E. Halladay."

In the indenture will be noticed the following:

"In case either party  *   *   *   desire to build a building longer than the present wall herein described, the same shall be on a line with the present wall, and if either party shall desire to build more than two stories high, the wall shall be on top of and on the same line as the present wall or any extension thereof.

\* \* \* Whenever said party wall or such portion thereof shall be rebuilt, it shall be erected on the same spot and on the same line, and be of the same size, and the same or similar material. \* \* \* "

There is evident here, not only a purpose to create cross-easements with respect to the existing wall, but also a purpose to secure for the benefit of owners of each parcel of land affected the opportunity and right to make use of any additions to the wall made by the other. In other words, it appears that the parties to the agreement were not content with declaring the existing wall to be a party wall, and all extensions of it a party wall when constructed, but they used apt words to bind themselves and their heirs to build no building higher or longer than the structure owned by the complainant, except with a wall which could be and should be used as a party wall. But I do not find in the agreement anything which forbids either party thereto to bring the front of his building out to the street line, extending the party wall for that purpose.

If the contract is construed as intended to restrict either owner in that regard, and I do not think it can be so construed, it is executed by one only of two owners of one of the parcels of land affected. As to defendant Lyle, the contract rests in parol. Having joined with her co-owner in using the existing wall as a party wall, she and her heirs may be bound to so consider it; her interest in the land being subject to such restrictions as are imposed by the fact that a party wall exists. The mere fact that a party wall exists would not prevent her from extending her building on her own land as she pleased.

I think, therefore, that the decree of the court below must be affirmed, with costs to appellees.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.